IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CALDWELL COUNTRY § <br> CHEVROLET II, LLC, § <br>       Plaintiff, § <br> § <br> V. § <br> § <br> ACQUISITION INTEGRATION, LLC, § <br>       Defendant. § | A-24-CV-304-RP |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Acquisition Integration's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 12) and all related briefing.[1] *See* Dkts. 14, 15. After considering the parties' briefing, applicable law, and oral arguments, the court now recommends the motion be denied.

**I.    BACKGROUND[2]**

Plaintiff Caldwell Country Chevrolet II, LLC ("Caldwell") brings this suit pursuant to 15 U.S.C. § 1332 against Defendant Acquisition Integration, LLC ("AI") under causes of action including breach of contract, stated account, and unjust enrichment. Dkt. 11, at ¶¶ 26–39. Caldwell alleges that AI failed to pay Caldwell for services and goods rendered under a contract known as the "Teaming Agreement" and the parties' subsequent contractual relationship including appendices and invoices.[3] *Id.* at ¶¶ 20–25. Caldwell alleges it shared detailed invoices with AI

---

[1] The motions and related briefing were referred to the undersigned for a Report and Recommendation by United States District Judge, Robert Pitman, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.
[2] At this stage of the litigation, all well-pleaded facts are taken as true.
[3] The Teaming Agreement was formed under Alabama law. *See* Dkt, 12–1, at 10 ("This Agreement is made under and will be construed in accordance with the laws of the Alabama without giving effect to choice-of-law rules.").

1

which AI not only promised to pay the full balance, but also did not dispute the amount. *Id.* at ¶ 22, 23.

The parties first connected to work together to win a contract with the United States government.[4] *Id.* at ¶ 14. Caldwell is a car dealership with experience in the business of "'upfitting' vehicles, a process that entails custom specialization with certain accessories, features, or augmentations for government, commercial, or other particular uses." *Id.* at ¶ 12. AI is a "logistics, distribution, and technical services company for the commercial and military aerospace and vehicle industries." *Id.* at ¶ 13. AI wanted to win a "lucrative government contract," so the parties began working together to achieve this end. *Id.* at ¶ 15. AI would be the "Prime Contractor" with the responsibility of communicating directly with the government, and Caldwell would be the "Subcontractor"—in charge of supplying the vehicles. *Id.* at ¶¶ 14, 15.

On August 2, 2021, the parties entered into the Teaming Agreement which outlines the work needed to win the government contract and includes an Appendix A-001. *Id.* at ¶ 15; s*ee* Dkt. 12–1 (The Teaming Agreement). AI won the "Prime Contract" with the government on or around November 8, 2021. *Id.* at ¶ 17. Caldwell began providing vehicles for AI to supply its contract with the government as a part of the "work set forth in the proposal" to win the government contract. *Id.* When AI ceased payments for the vehicles, Caldwell invoiced AI for them, resulting in over $4.5 million in outstanding fees. *Id.* at ¶ 22. Caldwell terminated the Teaming Agreement on September 26, 2023, after AI failed to pay Caldwell for months. *Id.* at ¶ 24.

Caldwell alleges first that the government accepted and paid AI for the vehicles Caldwell furnished for AI, and second, that AI admitted to and did not dispute the outstanding charges. *Id.* at ¶ 21, 23. AI materially breached the Teaming Agreement contract between the parties by failing

---

[4] *See* United States General Services Administration "GSA" solicitation number 47QMCA21R0008.

to perform its obligations and pay Caldwell. *Id.* at ¶ 24, 29. AI's failure to remit payment to Caldwell caused it to experience substantial and ongoing harm. *Id.* at ¶ 30. Caldwell further claims the parties had an agreement on the Outstanding Invoices and that AI received unjust benefits. *Id.* at ¶ 33, 36.

AI moves to dismiss Caldwell's claims arguing Caldwell has failed to state a claim on which relief may be granted because its allegations "are insufficient to raise a right to relief above the speculative level." Dkt. 12, at 1.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Furthermore, "any ambiguities or doubts regarding the sufficiency of the claim" must be resolved in favor of the plaintiff at the motion to dismiss stage. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (cleaned up).

Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

When evaluating a motion to dismiss, the court considers "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court may also consider "'documents that a defendant attaches to a motion to dismiss. . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

### III.   ANALYSIS

    **A.   Breach of Contract**

Under Alabama law,[5] the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (cleaned up).[6] The party asserting a breach of contract claim, "must prove every element of that claim; the failure to prove any one element necessarily results in a judgment for the opposing party." *Id.* at 491 (emphasis in original).

Caldwell sufficiently pleaded its own performance by stating that it made timely delivery of all the required vehicles. Dkt. 11, at ¶ 20. AI's nonperformance was pleaded through Caldwell's statements that invoices were shared, there was no dispute about the amount owed, and AI failed to remit payment. *Id.* at ¶¶ 21, 22. And Caldwell clearly alleged its financial losses. *Id.*

As for the existence of a valid contract, the elements of a contract include "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997).[7] Caldwell alleges that the Teaming Agreement, a validly executed contract, is the contract governing delivery and payment of vehicles under the Prime Contract. Dkt. 11, at ¶ 15. Furthermore, Caldwell states the Teaming Agreement includes Appendix A-001 and the attached invoices. *Id.* The Appendix includes terms governing the

---

[5] The Teaming Agreement was formed in Alabama with an Alabama choice of law clause. Dkt. 12–1, at 7. Caldwell cites Texas and Alabama law in its breach of contract analysis (Dkt. 14), and AI cites to Texas or Fifth Circuit law (Dkt. 12; Dkt. 15).

[6] Under Texas law, the elements of a breach of contract claim are virtually identical: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Smith Int'l, Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007).

[7] This law is also virtually identical to its Texas counterpart: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (cleaned up).

delivery and payment of the vehicles including profit splitting shares, a payment delivery deadline, and an expiration timeline for the contract.[8] Dkt. 12–1, at 10.

After the parties were awarded the Prime Contract with the government, Caldwell began making deliveries of the vehicles, AI was paid by the government for the deliveries, and AI failed to make full payment to Caldwell for the deliveries. Dkt. 11, at ¶ 21. Furthermore, at the hearing Caldwell stated it had received payments from AI for approximately the first year and a half that Caldwell delivered vehicles to the government, and Caldwell stated the government required the addition of Appendix A-001 to have a written promise to perform should AI be awarded the contract. The court finds that Caldwell's pleadings were not merely conclusory and are sufficient to survive a motion to dismiss.

### B. Stated Account

To establish a claim for an account stated, a plaintiff must show "(1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties that fixes the amount due; and (3) the party to be charged makes a promise, express or implied, to pay the indebtedness." *Arshad v. Am. Express Bank, FSB*, 580 S.W.3d 798, 805 (Tex. App.—Hous. [14th Dist.] 2019, no pet.).

Caldwell has shown there were transactions between the party giving rise to indebtedness. Dkt. 11. Particularly, the parties worked together to win an award, which they won, Caldwell performed its obligations by supplying vehicles to the government, while AI accepted payment for the vehicles from the government without remitting any to Caldwell. *Id.* at ¶¶ 15–17, 21. The Teaming Agreement, including Appendix A-001, shows an express agreement existed between the

---

[8] The court may consider the Appendix, attached to AI's Motion to Dismiss, at this stage because it is central to the claims and referenced in the Amended Complaint. *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023).

parties to perform under the government contract, and the invoices that Caldwell sent to AI coupled with AI's receipt and non-dispute of the invoices is sufficient to show at minimum an implied agreement between the parties that fixes the amount due. *Id.* at ¶ 21. Finally, by continuing to order Caldwell to deliver vehicles to the government and accepting payment from the government, AI made an implied promise to pay its increasing indebtedness to Caldwell. *Id.*

The court finds this cause of action to be sufficiently pleaded.

### C.   Unjust Enrichment

Historically, it has been unclear whether unjust enrichment is a standalone cause of action or a remedy theory to be used with other claims. The undersigned is recommending that the first two claims survive but will briefly address the independence of unjust enrichment should his recommendation not be followed.

This court has previously held that "the Texas Supreme Court and the Fifth Circuit have each recognized that unjust enrichment is an independent cause of action under Texas law." *Branch Banking & Tr. Co. v. HealthGrowth Credit, LLC*, No. 1:18-CV-783-RP, 2019 WL 6015317, at *6 (W.D. Tex. July 23, 2019) (Pitman, J.).[9] And "[b]ecause the Court is bound to apply Texas law as interpreted by the Texas Supreme Court . . . and because the Court is also bound by Fifth Circuit precedent interpreting Texas law . . . the Court concludes that there is an unjust enrichment cause of action under Texas law. *Id.* (cleaned up); *see also Elias v. Pilo*, 781 F. App'x 336, 338 (5th Cir. 2019) ("For the purposes of this appeal, we will assume that unjust enrichment is an independent cause of action under Texas law.").

As both parties identify, a claim for unjust enrichment can be made by alleging "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Sullivan*

---

[9] Citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007).

*v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (cleaned up). Caldwell goes on to introduce a theory of passive unjust enrichment in its Response. Dkt. 14, at 19. Passive unjust enrichment requires only that a person "[has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain" and negates the need for fraud, duress, or undue advantage. *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied). The court does not reach passive unjust enrichment because it finds that Caldwell has alleged sufficient facts for unjust enrichment by taking of an undue advantage.

Caldwell alleged that it provided vehicles to fulfill both its obligation to AI and AI's obligation to the government, that AI was paid by the government for the vehicles, and that AI did not remit payment to Caldwell. Dkt. 11, at ¶ 21. These allegations show AI to have received an undue advantage—profits from the government—that was intended as payment for the goods delivered. The court finds Caldwell made a sufficient claim for unjust enrichment.

## IV. LEAVE TO AMEND

Caldwell has not requested leave to amend at this time and has previously amended its Complaint. If the District Judge does not adopt any of the undersigned's recommendations, the undersigned would recommend that any dismissal of Caldwell's claims be without prejudice and Caldwell be allowed to amend its First Amended Complaint to address any deficiencies.

## V. RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** Defendant Acquisition Integration's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 12) be **DENIED**.

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED October 29, 2024.

_____
Mark Lane
United States Magistrate Judge